IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JUSTIN GONDA, #A1049736, | ) CIV. NO. 17-00292 SOM-RLP |
| | ) |
| Plaintiff, | ) ORDER DISMISSING SECOND |
| | ) AMENDED COMPLAINT IN PART |
| vs. | ) AND DIRECTING SERVICE |
| | ) |
| SCOTT RECARTE, et al., | ) |
| | ) |
| Defendants, | ) |
| _____ | ) |

**ORDER DISMISSING SECOND AMENDED COMPLAINT
IN PART AND DIRECTING SERVICE**

Before the court is pro se Plaintiff Justin Gonda's
second amended prisoner civil rights complaint ("SAC"),
brought pursuant to 42 U.S.C. § 1983.  SAC, ECF No. 15.
Gonda alleges that state officials violated his
constitutional rights under the Eighth and/or
Fourteenth Amendments when they failed to protect him
from an assault by other inmates and then denied him
adequate medical care.[1]  Gonda seeks declaratory relief
and compensatory and punitive damages.

---

[1] Gonda names Hawaii Governor David Y. Ige, Department of
Public Safety ("DPS") Director Nolan Espinda, DPS Deputy Director
Jodie Maesaka, Oahu Community Correctional Center ("OCCC") Warden
Francis Sequeira, Chief of Security Denise Johnson, Officers
Scott Recarte, Henry Moe, John Doe, Matthew Kuresa, Dr. Mark
Pedri, D.O., and Dr. Richard Banner, M.D., as Defendants in their
individual and official capacities.

Gonda's claims against all Defendants named in their official capacities are DISMISSED with prejudice. Gonda's claims against Dr. Pedri, Dr. Banner, Governor Ige, Director Espinda, Deputy Director Maesaka, Warden Sequeira, and Chief of Security Johnson in their individual capacities are DISMISSED without prejudice. Gonda's claims against Scott Recarte, Henry Moe, John Doe, and Matthew Kuresa in their individual capacities shall proceed and be served.

The United States Marshals Service SHALL serve the Second Amended Complaint, as limited herein, on Defendants Recarte, Moe, Doe, and Kuresa as directed by Gonda, and they are DIRECTED to file a response.

## I.  BACKGROUND

On June 16, 2017, Gonda commenced this action.  *See* ECF Nos. 1, 3, 4.

On August 9, 2017, Gonda filed his First Amended Complaint ("FAC").  ECF No. 9.  He alleged that: (1) Recarte, Moe, and Doe failed to protect him from an assault by two inmates that occurred on April 26, 2017; (2) Kuresa failed to prevent his later injury in his

cell; and (3) Dr. Pedri and Dr. Banner failed to provide him adequate medical care thereafter.

On September 15, 2017, the court screened the FAC pursuant to 28 U.S.C. § 1915(e) and § 1915A(a) and dismissed claims: (1) against all Defendants in their official capacities, with prejudice; (2) against Dr. Banner, with leave to amend; and (3) as alleged under 42 U.S.C. § 1983 against Dr. Pedri, with leave to amend. *See* Order Dismissing Amended Complaint In Part, ECF No. 12 ("September 15 Order"). Gonda's Fourteenth Amendment claims against Recarte, Moe, Doe, and Kuresa, and his state law negligence claims against Dr. Pedri and Kuresa were deemed suitable for service. *See id.* The court directed Gonda either to file an amended complaint curing the deficiencies in the claims dismissed without prejudice or to notify the court that he would stand on his claims against Recarte, Moe, Doe, Dr. Pedri, and Kuresa as limited by the September 15 Order. In the latter event, the court would direct the United States Marshals Service Service to serve the FAC.

On September 28, 2017, Gonda filed the SAC.  ECF No. 15.  He alleges that previously named Defendants Recarte, Moe, Doe, Pedri, Kuresa, and Banner, and newly named Defendants Ige, Espinda, Maesaka, Sequeira, and Johnson acted with deliberate indifference to his health or safety in violation of the Eighth and/or Fourteenth Amendments.  He asserts that the State of Hawaii is liable for Defendants' acts or omissions pursuant to Haw. Rev. Stat. § 662-2.

## II.  SCREENING

The court conducts a pre-answer, sua sponte screening of prisoners' pleadings pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).  The court must dismiss a prisoner's complaint, or any portion of it, that is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune from suit.  *See Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2).  "The purpose of [screening] is 'to ensure that the targets of frivolous

4

or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (describing pre-answer screening) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (same). Rule 12(b)(6) requires that a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining

whether a complaint states a plausible claim for relief
[is] . . . a context-specific task that requires the
reviewing court to draw on its judicial experience and
common sense." *Id.* The "mere possibility of
misconduct" or "unadorned, the defendant-unlawfully-
harmed me accusation[s]" fall short of meeting this
plausibility standard. *Id.*

Leave to amend should be granted if it appears the
plaintiff can correct the complaint's defects. *Lopez*,
203 F.3d at 1130. A court may dismiss a complaint or
claim without leave to amend, however, when "it is
clear that the complaint could not be saved by any
amendment." *Sylvia Landfield Trust v. City of L.A.*,
729 F.3d 1189, 1196 (9th Cir. 2013).

### III. DISCUSSION

Gonda is proceeding under 42 U.S.C. § 1983. "To
sustain an action under section 1983, a plaintiff must
show '(1) that the conduct complained of was committed
by a person acting under color of state law; and (2)
that the conduct deprived the plaintiff of a federal
constitutional or statutory right.'" *Hydrick v.*

*Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009).

Additionally, a plaintiff must allege that he suffered a specific injury as a result of a particular defendant's conduct and an affirmative link between the injury and the violation of his rights. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

## A. Summary of Allegations in the SAC[2]

The SAC alleges that Defendants violated Gonda's rights under the Eighth and/or Fourteenth Amendments,

---

[2] For screening purposes, Gonda's allegations of material fact are accepted as true and construed in the light most favorable to him. *See Nordstrom*, 762 F.3d at 908.

omits negligence claims that Gonda had asserted in prior pleadings,[3] and asserts that the State of Hawaii has waived its immunity for liability for Defendants' constitutional torts pursuant to Haw. Rev. Stat. § 662-2.

Gonda says that he was attacked by two inmates on the OCCC recreation yard on Wednesday, April 26, 2017, at approximately 9:30 in the morning. He says that Officers Recarte, Moe, and Doe stood nearby and observed the assault, yet failed to intervene or come to his aid. After the assault, Recarte denied that he had seen anything.

Gonda was taken to the OCCC infirmary, where cuts on his eye and elbow were cleaned and he was given an ice pack for his face. Gonda says Dr. Banner was present, but he does not detail what Banner said or did, other than alleging that Banner denied his request

_____

[3] Although Gonda previously asserted broad negligence claims against Banner and Pedri, he omits them in the SAC, and the court cannot "supply essential elements of [a] claim" that a plaintiff does not allege. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011). "[A]n 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" *Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (citation omitted).

to be taken to an emergency room.  Someone at the
infirmary, perhaps Banner, explained that x-rays would
be taken the next day, Thursday, April 27, 2017.[4]  After
three hours, Gonda returned to his cell.  At 7:00 p.m.,
he was given Naproxen 500 mg. for pain.

The next day, April 27, 2017, Gonda returned to the
infirmary.  X-rays were taken that confirmed that his
arm was broken and showed that he had a possible
fracture to his face.  Dr. Pedri put Gonda's arm in a
cast, gave him a sling, and told him that he would be
given a "No Top Bunk" memorandum.[5]  When Gonda did not
receive this memorandum that night, he asked the nurse
to consult with Drs. Banner and Pedri, who he said were
aware of his injuries and had approved the memorandum.

Gonda slept in a lower bunk until May 1, 2017, when
Kuresa moved him into a cell with a cellmate, and
directed Gonda to take the top bunk.  Gonda says that

---

[4] Gonda was told that x-rays are regularly scheduled at OCCC on Thursdays.

[5] Gonda says this memorandum would include permission for an arm sling and Ace bandage.  He admits that his arm was placed in a cast and he was given an arm sling on April 27, 2017, however.

Kuresa did so over his objections, and despite Gonda's
obvious injuries, because Gonda did not have a "Top
Bunk" memorandum, and his new roommate required the
lower bunk because he urinated frequently.  Gonda says
the roommate did not have Top Bunk memorandum.

On May 2, 2017, Gonda tripped while climbing from
the top bunk.  He was unable to prevent the fall
because of his cast and sling and he allegedly incurred
further injuries to his face from the fall.  Gonda does
not explain what medical treatment he received at OCCC
for the next several days after this second event.

On May 8, 2017, Gonda was sent to Dr. Allen
Strasberger, MD, a plastic surgeon who reviewed the x-
rays taken at OCCC on April 27, 2017, and ordered a
"full CT scan again."  SAC, ECF No. 15, PageID #122.  A
scan was performed on May 18, 2017.  Dr. Strasberger
received the results on May 26, 2017, and confirmed
that Gonda had three fractures in his face.

On June 6, 2017, Dr. Strasberger operated on
Gonda's face.  Although Gonda complains that, between
the date of the assault and the date of his surgery, he

"was not getting medication," he also states that "the meds they prescribed did not work & [he] kept on putting in requests to get higher dosages [but] . . . they just kept giving me the same meds, increased them, and/or changed them, and still it would not work." *Id.*, PageID. #123.

**B.  Immunities**

As explained in the September 15 Order, the "Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007).  That is, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Ex parte Young*, 209 U.S. 123 (1908).

Official capacity defendants are subject to suit under § 1983 only "for prospective declaratory and injunctive relief . . . to enjoin an alleged ongoing

violation of federal law." *Oyama v. Univ. of Haw.*,
2013 WL 1767710, at *7 (D. Haw. Apr. 23, 2013) (*quoting*
*Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005),
*abrogated on other grounds by Levin v. Commerce Energy*
*Inc.*, 560 U.S. 413 (2010)).

First, a state must unequivocally waive sovereign
immunity, or Congress must override that immunity, for
a state, its agencies, and its officials to lose their
immunity from suit in federal court. *Will*, 491 U.S. at
66–67; *Krainski v. Nev. ex rel. Bd. of Regents of Nev.*
*Sys. of Higher Educ.*, 616 F.3d 963 967 (9th Cir. 2010)
(Eleventh Amendment immunity extends to state
instrumentalities and agencies, as well as state
officials in their official capacities); *Baranyi v.*
*Univ. of Hawaii*, 2015 WL 3753091, at *3 (D. Haw. June
16, 2015).  Hawaii has not unequivocally waived its
sovereign immunity and Congress has not overridden that
immunity regarding civil rights actions brought
pursuant to 42 U.S.C. § 1983.

Second, although Haw. Rev. Stat. § 662-2 waives the
State's immunity for liability under the State Tort

Liability Act for state tort suits against state employees, this statutory waiver enacted by the Hawaii Legislature (not Congress), has no effect on the State's immunity from suit for violations of federal law brought in federal court. *See Ofice of Hawaiian Affairs v. Dep't of Educ.*, 951 F. Supp. 1484, 1491 (D. Haw. 1996). Gonda alleges no state law claims in the SAC.

Third, Gonda seeks remedies for alleged *past* violations of his federal constitutional rights; he alleges no facts showing an ongoing violation. Moreover, his request for declaratory relief is subsumed by his damages action. *See Rhodes v. Robinson*, 408 F.3d 559, 566 n.8 (9th Cir. 2005) ("And because his claim for damages necessarily entails a determination whether the officers' alleged conduct violated his rights, his separate request for declaratory relief is subsumed by his damages action."). Gonda otherwise seeks only compensatory and punitive damages.

Finally, in addition to being barred by the Eleventh Amendment, a state, state agency, or state official acting in his or her official capacity is not considered a "person" amenable to suit under § 1983. *Will*, 491 U.S. at 71.

Gonda's claims against all Defendants named in their official capacities are DISMISSED with prejudice. To the extent that he alleges claims against the State, or asserts that the State is liable in this federal suit under Haw. Rev. Stat. § 662-2, those claims are DISMISSED with prejudice.

## C. Pretrial Detainee Claims Against Defendants Sued in Their Individual Capacities Arise Under the Fourteenth Amendment.

This court turns to claims against Defendants in their individual capacities. Because Gonda was a pretrial detainee when the events at issue allegedly occurred, his claims arise under the Fourteenth Amendment rather than the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067-69 (9th Cir. 2016),

*cert. denied*, 137 S. Ct. 831 (2017)*; Lolli v. Cty. of Orange*, 351 F.3d 410, 419 (9th Cir. 2003).

### 1.  Defendants Recarte, Moe, Doe, and Kuresa

The September 15 Order held that Gonda stated a plausible § 1983 claim for relief based on the Fourteenth Amendment's Due Process Clause against Defendants Recarte, Moe, Doe, and Kuresa.  *See* Order, ECF No. 12, PageID #57-59, 62-64.  That is, under *Castro*, Gonda alleged sufficient facts to show that these Defendants acted with "more than negligence but less than subjective intent–something akin to reckless disregard."  *Castro*, 833 F.3d at 1067-68.

The SAC states plausible § 1983 claims for relief against Recarte, Moe, Doe, and Kuresa based on the Fourteenth Amendment's Due Process Clause, and these claims shall be served.

### 2.  Defendants Dr. Banner and Dr. Pedri

As discussed in detail in the September 15 Order, it is unsettled which standard of review governs a pretrial detainee's claims regarding the alleged denial of adequate medical care.  *See* Order, ECF No. 12,

PageID #60-62. The Eighth Amendment's two-pronged,
objective and subjective standard once clearly applied
to such claims, setting the *minimum* protection that
must be afforded. *See Lolli v. Cty. of Orange*, 351
F.3d 410, 419 (9th Cir. 2003) (holding that pretrial
detainees' medical care claims arise under the
Fourteenth Amendment, but are analyzed under the Eighth
Amendment's deliberate indifference test). This
standard requires a showing that (1) the risk posed to
the prisoner is *objectively*, sufficiently serious; and
(2) the prison official *subjectively* "knows of and
disregards an excessive risk to inmate health or
safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 837
(1970) (citation omitted).

   *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473-74
(2015), however, called this analysis into question
when the Court held that a solely objective test
applies to pretrial detainees' excessive force claims.
Since *Kingsley*, a pretrial detainee alleging an
excessive force claim, "must show only that the force

16

purposely or knowingly used against him was objectively unreasonable." *Id.* at 2473.

The Ninth Circuit has extended this principle to pretrial detainees' failure-to-protect claims. *See Castro*, 833 F.3d at 1067-68, 1071 & n.4. Under *Castro*, a pretrial detainee alleging a failure-to-protect claim, must show that:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved -- making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro*, 833 F.3d at 1071 & n.4.

Under either standard, Gonda fails to state a plausible claim for relief under the Fourteenth Amendment against Dr. Banner and Dr. Pedri. Negligent

conduct alone does not state a constitutional claim for relief under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 329-30 (1986). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

Gonda was taken immediately to the OCCC infirmary after the assault, where he was examined and treated. He received x-rays the next morning, and when it was confirmed that his arm was broken, Dr. Pedri put a cast on it and gave Gonda a sling. Gonda was told that he *may* have fractured his face, and it appears that he was scheduled for an outside examination to confirm this *before* he fell in his cell on May 2, 2017.

Gonda complains that, had Dr. Banner and Dr. Pedri ensured that he received a "No Top Bunk" memorandum before he fell on May 2, 2017, he would not have incurred further injuries. But Gonda was using a lower bunk when Drs. Banner and Pedri saw him at the

infirmary on April 26 and 27, and he continued doing so until at least May 1, 2017.  It is unclear whether they were aware that Gonda had been assigned to a top bunk five days after they saw him.  It appears that Kuresa arbitrarily moved Gonda to a new cell and bunk without input from Drs. Banner and Pedri.  And nothing suggests that they purposely withheld the No Top Bunk memorandum with deliberate indifference or reckless disregard to Gonda's serious medical needs, or that they made an intentional decision to delay or withhold the No Top Bunk memorandum, and thereby failed to take reasonable measures to abate a perceivable, substantial risk of serious harm to Gonda.  Possibly the memorandum was misplaced, or Drs. Banner and Pedri simply forgot to issue it before Gonda's fall.  In any event, Gonda must allege some facts going to more than an error or negligence.

Gonda also claims that his pain medication was not effective.  But he admits that he was given pain medication, and that, when he complained, the medication was increased or changed; he does not allege

that he was denied pain relief.  Gonda was sent to a specialist, Dr. Strasberger, on May 8, 2017, less than two weeks after his initial injury and six days after his fall.  Dr. Strasberger ordered more x-rays, and when they confirmed that Gonda's face was fractured, he was scheduled for surgery less than three weeks later.

In light of these facts, Gonda fails to state a plausible claim for deliberate indifference under § 1983 against Dr. Pedri and Dr. Banner, and these claims are DISMISSED without prejudice.

### 3.  *Ige, Espinda, Maesaka, Sequeira, Johnson*

Gonda fails to link Defendants Ige, Espinda, Maesaka, Sequeira, and Johnson to any act or omission showing that they participated in or directed the alleged violations of his Constitutional rights.  He therefore fails to state a plausible claim for relief against them.

To the extent Gonda alleges that Ige, Espinda, Maesaka, Sequeira, or Johnson are liable for the other Defendants' conduct based on their supervisory positions, he may not do so.  Liability may not be

imposed on supervisory personnel under § 1983 for the
acts or omissions of their subordinates under the
theory of respondeat superior. *Iqbal*, 556 U.S. at
676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011,
1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588
F.3d 1218, 1235 (9th Cir. 2009).

Supervisors may be held liable only if they
"participated in or directed the violations, or knew of
the violations and failed to act to prevent them."
*Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989);
*accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir.
2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir.
2009). Supervisory liability may also exist if the
official implemented "a policy so deficient that the
policy itself is a repudiation of the constitutional
rights and is the moving force of the constitutional
violation." *Redman v. Cty. of San Diego*, 942 F.2d
1435, 1446 (9th Cir. 1991) (citations and quotations
marks omitted), *abrogated on other grounds by Farmer v.
Brennan*, 511 U.S. 825 (1970). Gonda alleges no
personal participation by these Defendants nor any

policy or procedure that they implemented or approved that precipitated his allegations. Gonda fails to state a supervisory liability claim against Ige, Espinda, Maesaka, Sequeira, and Johnson, and claims against these Defendants are DISMISSED without prejudice.

## IV. **SERVICE ORDER**

IT IS HEREBY ORDERED:

(1) The Clerk of Court shall send the United States Marshals Service a copy of the present Order, the endorsed Second Amended Complaint, a completed Summons for Defendants Scott Recarte, Henry Moe, and Matthew Kuresa,[6] one completed USM-285 form for each of the three Defendants, one completed Notice of Lawsuit and Request for Waiver of Service for Summons form (AO 398) for each of the three Defendants, and **two** completed Waiver of Service of Summons forms (AO 399) for each of the three Defendants.

---

[6] Gonda is reminded that it is his responsibility to timely identify John Doe.

a.  Because Recarte, Moe, and Kuresa are alleged to be Hawaii Department of Public Safety ("DPS") employees, the Clerk of Court shall complete separate service documents for each of those Defendants and address these documents to Shelley Nobriga, DPS Litigation Coordinator, 919 Ala Moana Blvd., 4th Floor Honolulu, HI 96814, who has agreed to accept one copy of this Order, one copy of the Second Amended Complaint, and the waiver of service forms for all DPS Defendants.

(2)  Upon receipt of these documents from the Clerk, the United States Marshals Service shall mail to Ms. Nobriga one copy of this Order, the Second Amended Complaint, the Notice of Lawsuit and Request for Waiver of Service forms (AO 398), and the Waiver of Service of Summons forms (AO 399).

(3)  The United States Marshals Service shall retain the Summons, a copy of this Order, and a copy of the Second Amended Complaint.  If Defendants waive service of the Summons, they shall return the Waiver of Service forms to the United States Marshals Service within a

reasonable time (not less than thirty days from the date requests for waiver of service are mailed). If the Waiver of Service of Summons forms and requests for waiver of service are returned as undeliverable, the United States Marshals Service shall immediately file them with the court.

(4) If any Defendant fails to return the Waiver of Service of Summons forms within a reasonable time from the date of mailing, the United States Marshals Service shall:

a. Personally serve such Defendant with this Order, the Second Amended Complaint, and Summons pursuant to Fed. R. Civ. P. 4 and 28 U.S.C. § 566(c) and shall obtain all necessary assistance from the Department of Public Safety for service on DPS employees, to execute this Order.

b. Within ten days after personal service, the United States Marshals Service shall file the return of service for Defendant(s), along with evidence of any attempts to secure a waiver of service of summons and of the costs incurred in

effecting personal service.  These costs shall be set forth on the USM-285 form and shall include costs incurred by the United States Marshals Service for photocopying additional copies of this Order, the Second Amended Complaint, and Summons, and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served Defendant in accordance with the provisions of Fed. R. Civ. P. 4(d)(2).

(5) Defendants Recarte, Moe, and Kuresa shall file a response to the Second Amended Complaint (as limited by this Order) within the time provided in Fed. R. Civ. P. 12.  Failure to do so may result in the entry of default.

(6) Gonda shall inform the court of any change in his address by filing a "NOTICE OF CHANGE OF ADDRESS." The notice shall contain only information about the change of address and its effective date and shall not include requests for other relief.  Failure to file such notice may result in the dismissal of the action for failure to prosecute under Fed. R. Civ. P. 41(b).

(7) After the Second Amended Complaint is served
and Defendants have filed a response, all documents
Gonda files thereafter will be deemed served on any
Defendant(s) or their attorney(s) who participate in
the court's Case Management/Electronic Case Filing
(CM/ECF) system.  The United States Marshals Service is
not responsible for serving documents after service of
the operative pleading.

## V.  **CONCLUSION**

(1)  The Second Amended Complaint is DISMISSED IN
PART.  Claims against all Defendants in their official
capacity are DISMISSED with prejudice; claims against
Governor David Y. Ige, Nolan Espinda, Jodie Maesaka,
Francis Sequeira, and Denise Johnson in their
individual capacities are DISMISSED without prejudice;
claims against Dr. Richard Banner and Dr. Pedri in
their individual capacities are DISMISSED without
prejudice; claims against Scott Recarte, Henry Moe,
John Doe, and Matthew Kuresa in their individual
capacities may proceed and be served.

(2)  The Clerk is DIRECTED to send the completed service documents detailed above to the United States Marshals Service, who is DIRECTED to effect service on Defendants Scott Recarte, Henry Moe, and Matthew Kuresa as set forth above.

(3) After service is effected, Defendants Recarte, Moe, and Kuresa DIRECTED to file a response to the Second Amended Complaint.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 18, 2017.



_/s/ Susan Oki Mollway_____
Susan Oki Mollway
United States District Judge

_Gonda v. Recarte_, 1:17-cv-00292 SOM-RLP; Scrng '17 Gonda 17-292 som (dsm SAC prt dir SVC)